UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOANNA KRUPA, et al.,

       Plaintiffs,

v.                           Case No. 8:16-cv-3189-T-33MAP


PLATINUM PLUS, LLC,

       Defendant.

_____/

**ORDER**

    This matter comes before the Court in consideration of Defendant Platinum Plus, LLC's Motion to Dismiss Complaint (Doc. # 11), filed on February 14, 2017. Plaintiffs Joanna Krupa and Lina Posada filed a response in opposition on February 28, 2017. (Doc. # 16). For the reasons that follow, the Motion is granted in part as detailed below.

**I.**   **Background**

    Platinum Plus is an artificial entity that "has held itself out as a strip club" and "does business under the names of Pink Pony Tampa, Pink Pony Nude Show Club, Pink Pony Showgirls, and Platinum Showgirls." (Doc. # 1 at ¶¶ 17-18). To advertise its business, Platinum Plus utilizes several social-media platforms, such as Facebook and Twitter, and operates its own website. (Id. at ¶ 19).

Plaintiffs are models living in California who earn their respective livings "by promoting [their] image[s] and likeness[es] to select clients, commercial brands, media and entertainment outlets, as well as relying on [their] reputation[s] and own brand[s] for modeling, acting, hosting, and other opportunities." (Id. at ¶¶ 15–16, 25). Models, such as Plaintiffs, work as independent contractors for different agents or entities. (Id. at ¶ 30). But, before agreeing to work with an agent or entity, Plaintiffs "vet" the agent or entity, which entails determining if the person or entity seeking a license and release of the model's image, likeness or identity (1) is reputable, (2) has reputable products or services, and (3) would enhance or harm the model's stature or reputation through association with that person or entity. (Id. at ¶ 31a).

A model's "reputational information is used in negotiating compensation[,] which typically turns on the work a model is hired to do, the time involved, travel and how her image is going to be used . . . ." (Id. at ¶ 31b). "[T]o protect her reputation and livelihood, a model or [her] agent carefully and expressly defines the terms and conditions of use" of the model's image, likeness or identity. (Id. at ¶ 31c). "[T]he entire negotiated deal is reduced to and

2

memorialized in an integrated, written agreement . . . ." (Id. at ¶ 31d).

If a model endorses, promotes, advertises or markets the "wrong" product, service, or venture, or works in or is affiliated with a disreputable industry, the model's career can be negatively impacted by "limiting or foreclosing future modeling or brand endorsement opportunities." (Id. at ¶ 32). So, if "a model chose to jeopardize her career for a compromising engagement — such as appearing in an advertisement for an 'all nude[,] all friction strip club' — the fee she would charge would necessarily far exceed the fee typically charged for more . . . reputable work." (Id. at ¶ 33).

As to Plaintiffs' work history, Krupa is a model, actress, and dancer. (Id. at ¶ 38). Krupa has appeared on magazines such as *Personal*, *Envy*, *Maxim*, and *Playboy*; she was named "Sexiest Swimsuit Model in the World" and for two years in a row she was voted Germany's "*Maxim* Model of the Year"; she appeared in *Max Havoc: Curse of the Dragon*, *Superstars*, *Dancing with the Stars*, *The Real Housewives of Miami*, and is the head judge of Poland's *Next Top Model*. (Id.). Krupa also maintains a substantial following on social media with almost 870,000 followers on Instagram, almost 1 million followers on

Twitter, and has over 1 million likes on Facebook. (Id.).
Notably, "the number of online 'followers' or 'likes' is a
strong factor in determining the earning capacity of a model."
(Id. at ¶ 38 n.1).

For her part, Posada is a fashion model and designer,
"best known for her appearances in the Bésame and Espiral
Lingerie collection photo shoots." (Id. at ¶ 48). In addition,
Posada modeled for Paradizia Swimwear, Babalú Swimwear, Irgus
Swimwear, Ujeans, and "many others." (Id.). Posada, too,
maintains a sizeable following on social media with almost
640,000 views on YouTube, almost 5,500 Twitter followers,
over 6,000 followers on Facebook, and almost 75,000 Instagram
followers. (Id.).

Platinum Plus allegedly used Krupa's image, likeness,
and/or identity, see (Doc. # 1-1), to advertise and promote
its "'Super Sexy Saturday' events, '2-4-1 Dance & Shower
Shows' and 'Formerly Pink Pony Nude Show Club.'" (Doc. # 1 at
¶ 40). Likewise, Platinum Plus allegedly used Posada's image,
likeness, and/or identity, see (Doc. # 1-2), to advertise and
promote

> a Tampa Bay's "All Nude[,] All Friction Strip
> Club," . . . Pink Pony's Facebook page, Two Asians
> & a Grill Premier Hibachi Grill, "Always hiring
> dancers! No experience or nudity required," "5 Star
> Full Nude Club," private rooms, 5000 square foot

> gentlemen's club . . ., "over 100 Tampa Bay's most
> sexiest [sic] nude dancers," "30 Lap Dance Rooms,"
> "Hourly Shower Showers & Hourly Dungeon
> Exhibitions," VIP parties, and events.

(Doc. # 1 at ¶ 50). Plaintiffs' images, likenesses, and/or
identities "are being used as advertising, on social media,
as a coupon, and for branding purposes." (Id. at ¶ 41); see
also (Id. at ¶ 51) (alleging Posada's image, likeness, and/or
identity is being used additionally as "a third party
promotion and for extra usage"). However, neither Plaintiff
was hired by or contracted with Platinum Plus to advertise,
promote, market or endorse Platinum Plus's business. (Id. at
¶¶ 42, 52). In addition, Plaintiffs "never gave permission,
or assigned, licensed or otherwise consented to [Platinum
Plus] using [their] image[s], likeness[es] or identit[ies] .
. . ." (Id. at ¶¶ 44, 54). And, Platinum Plus did not pay
Plaintiffs for the use of their respective images, likenesses
or identities. (Id. at ¶¶ 45, 55).

After discovering the unauthorized use of their images,
likenesses, and/or identities, Plaintiffs' counsel sent
Platinum Plus a cease-and-desist letter, which contained a
confidential settlement agreement. (Id. at ¶ 58; Doc. # 1-
3). Platinum Plus "failed and refused to compensate [Krupa
and Posada] for the unauthorized use of their images or to

5

remove all of the infringing imagery from one or more social media sites controlled by it." (Doc. # 1 at ¶ 65).

Accordingly, Plaintiffs brought the instant action against Platinum Plus on November 14, 2016. (Doc. # 1). The Complaint asserts the same claims for each Plaintiff; namely, false advertising under the Lanham Act, 15 U.S.C. § 1125(a), false endorsement under the Lanham Act, 15 U.S.C. § 1125(a), right of publicity (unauthorized misappropriation of name/likeness) under section 540.08, Fla. Stat., common-law claim for right of publicity (unauthorized misappropriation of name or likeness), Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, civil theft under sections 812.014 and 772.11, Fla. Stat., unjust enrichment, and conversion.

Platinum Plus now moves to dismiss the Complaint for a host of reasons. (Doc. # 11). Plaintiffs responded in opposition. (Doc. # 16). The Motion is ripe for review.

## II. **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable

inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) (stating "[o]n a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true"). However:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

## III. **<u>Analysis</u>**

### A.   **<u>Claims under the Lanham Act</u>**

Under the Lanham Act,

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with

> another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). "Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1384 (2014). Plaintiffs bring claims for false advertising and false association.

### 1.   **False Advertising**

To show a defendant engaged in false advertising, a plaintiff "must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the . . . misrepresentations." Duty Free Ams., Inc. v. Estee Lauder Cos., Inc., 797 F.3d 1248, 1277 (11th Cir. 2015) (quoting Lexmark Int'l, 134 S. Ct. at 1395). And, to prove the statements caused the requisite injury, a plaintiff must show

> (1) the . . . statements were false or misleading;
> (2) the statements deceived, or had the capacity to
> deceive, consumers; (3) the deception had a
> material effect on the consumers' purchasing
> decision; (4) the misrepresented service affects
> interstate commerce; and (5) it has been, or likely
> will be, injured as a result of the false or
> misleading statement.

Id. (quoting Sovereign Military Hospitaller Order of Saint
John of Jerusalem of Rhodes and of Malta v. Fla. Priory of
the Knights of Hospitallers of the Sovereign Order of Saint
John of Jerusalem, Knights of Malta, the Ecumenical Order,
702 F.3d 1279, 1294 (11th Cir. 2012)).

The first element, that a statement is false or
misleading, "is satisfied if the challenged advertisement is
literally false, or if the challenged advertisement is
literally true, but misleading." Johnson & Johnson Vision
Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th
Cir. 2002) (citation omitted). If the statement is literally
false, no evidence of consumer deception is needed. Id. But,
if the statement is only misleading, the plaintiff must
present evidence of deception. Id.

A plaintiff must also establish materiality. That is, a
"plaintiff must establish that 'the defendant's deception is
likely to influence the purchasing decision'" of the
consumer. Id. at 1250 (citation omitted).

Relying primarily on *Kournikova v. General Media Communications, Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003), Platinum Plus argues Plaintiffs failed to state a claim for relief by failing to allege that they compete with Platinum Plus in the same market place or that they have suffered a competitive injury. (Doc. # 11 at 7-9). The arguments asserted by Platinum Plus are unpersuasive.

In *Kournikova*, a popular and internationally-known women's tennis player sued the publisher of *Penthouse* when it published "partially nude photographs of another woman falsely identified as Kournikova." 278 F. Supp. 2d at 1113. Kournikova brought suit for, among other things, false advertising under the Lanham Act and the defendant moved for summary judgment, arguing in part that Kornikova lacked standing to bring a false advertising claim because she was not a competitor of *Penthouse*. Id. at 1115. On review, the court in *Kournikova*, contrary to Platinum Plus's assertion, found Kournikova to be a competitor with the publisher of *Penthouse*. Id. at 1118. The court noted that while Kournikova was a professional tennis player, she also "pursue[d] a (possibly more successful) career as a model and sex symbol and likewise markets videos and calendars," and that both Kournikova and *Penthouse* sold those products over the

10

internet and to a variety of magazines and retailers. Id. The court ultimately found Kournikova and *Penthouse* to "compete for the same dollars from the same target audience," at least in "some of their commercial activities." Id.

As the court in Kornikova found "a model and sex symbol" who marketed videos and calendars to be a competitor of *Penthouse*, this Court likewise finds that, based on the allegations in the Complaint, Plaintiffs, at least in some aspects of their careers, compete for the same dollars of the same target audience as Platinum Plus. (Doc. # 1 at ¶¶ 38, 48). Furthermore, the Complaint alleges Platinum Plus used the same methods of distribution (social media) as did Plaintiffs. (Id. at ¶¶ 38, 40, 41, 48, 50, 51). Thus, the Court finds Platinum Plus's argument unpersuasive.

Platinum Plus next contends the Complaint should be dismissed because Plaintiffs failed to introduce evidence of injury. (Doc. # 11 at 8). Platinum Plus's argument, however, is premature. Although Plaintiffs will ultimately have to prove the elements of false advertising through the introduction of evidence, at this preliminary stage Plaintiffs need only plead allegations giving rise to a plausible claim to relief. Given the premature nature of Platinum Plus's argument, which is more appropriately raised

at summary judgment, the Court declines to dismiss the false advertising claim. It is also worth noting that a fair reading of the Complaint shows Plaintiffs allege they have been damaged in the following aspects: damage to their respective brands, which in turn negatively affects future earning capacity, and Platinum Plus's putative misappropriation "encouraged[] or facilitated other" entities to misappropriate the Plaintiffs' images. (Doc. # 1 at ¶¶ 24-57).

### 2.   **False Association**

Platinum Plus argues Plaintiffs failed to plead sufficient facts demonstrating confusion. (Doc. # 11 at 9-13). The thrust of Platinum Plus's argument as to the lack of confusion is that "Plaintiffs are not 'recognizable'" and so "there can simply be no 'confusion' on the bare fact that photos of 'pretty faces' were used to promote a Gentlemen's Club." (Id. at 12).

To prevail on a claim of trademark infringement, a plaintiff "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338,

1346 (11th Cir. 2012) (citation omitted); <u>see also</u> <u>Univ. of</u>
<u>Ala. Bd. of Trs. v. New Life Art, Inc.</u>, 683 F.3d 1266, 1278
(11th Cir. 2012) ("we have never treated false endorsement
and trademark infringement claims as distinct under the
Lanham Act") (citation omitted).

> To satisfy the first element of § 43(a)—proof of a
> valid trademark—a plaintiff need not have a
> registered mark. . . . "[T]he use of another's
> unregistered, i.e., common law, trademark can
> constitute a violation of § 43(a) where the alleged
> unregistered trademarks used by the plaintiff are
> so associated with its goods that the use of the
> same or similar marks by another company
> constitutes a false representation that its goods
> came from the same source."

<u>Tana v. Dantanna's</u>, 611 F.3d 767, 773 (11th Cir. 2010)
(citation omitted).

The Eleventh Circuit recognizes four categories of
distinctiveness:

> "(1) generic—marks that suggest the basic nature of
> the product or service; (2) descriptive—marks that
> identify the characteristic or quality of a product
> or service; (3) suggestive—marks that suggest
> characteristics of the product or service and
> require an effort of the imagination by the
> consumer in order to be understood as descriptive;
> and (4) arbitrary or fanciful—marks that bear no
> relationship to the product or service, and the
> strongest category of trademarks."

<u>Id.</u> at 774 (citation omitted). The third and fourth categories
are distinctive enough to receive protection, the second can
be, and the first is generally not enough. <u>Id.</u>

To evaluate confusion, the Eleventh Circuit uses the following multifactor test:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

Id. at 774-75. The strength of a descriptive mark, in turn, is measured by

> (1) "the length and nature of the name's use," (2) "the nature and extent of advertising and promotion of the name," (3) "the efforts of the proprietor to promote a conscious connection between the name and the business," and (4) "the degree of actual recognition by the public that the name designates the proprietor's product or service."

Id. at 776.

Platinum Plus does not analyze Plaintiffs' false-association claims in the light of the Eleventh Circuit jurisprudence summarized above. Rather, Platinum Plus focuses primarily on case law from the Ninth Circuit Court of Appeals and district courts therein. (Doc. # 11 at 9-12). Of course, such case law does not bind this Court, which sits in the Eleventh Circuit.

After reviewing the Complaint, the Court finds that, under Eleventh Circuit jurisprudence, Plaintiffs have alleged sufficient facts to state a plausible claim for relief. Plaintiffs allege the marks infringed upon were their respective images or likenesses and, to show the degree of protection warranted for those marks, they allege the number of followers on social media, which is substantial, and the extensive work they have done in the modeling industry. (Doc. # 1 at ¶¶ 34, 38, 40-41, 48, 50-51). In addition, Plaintiffs allege they use the same methods of advertising, social media, as Platinum Plus. (Id. at ¶¶ 41, 51). In short, when taken as a whole, Plaintiffs alleged enough to survive Platinum Plus's Motion. Whether Plaintiffs can prove all that needs to be shown under Eleventh Circuit case law remains to be seen and Platinum Plus is free to argue they have not at summary judgment or trial.

**B.    Supplemental Jurisdiction**

Platinum Plus further argues that, even if the Court does not dismiss the claims under the Lanham Act, the Court should decline to exercise supplemental jurisdiction over the state-law claims. (Doc. # 11 at 13-15). Plaintiffs argue the exercise of supplemental jurisdiction is appropriate. (Doc. # 16 at 13).

15

Federal courts are courts of limited jurisdiction. Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). The presumption, in fact, is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. United States v. Rojas, 429 F.3d 1317, 1320 (11th Cir. 2005). Nevertheless, the exercise of jurisdiction is proper over claims to which the Court's jurisdiction would ordinarily not extend if they form part of the same case or controversy as "any civil action of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a). But, as codified in 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a state law claim when such claim (1) raises a novel or complex issue of state law or (2) would substantially predominate over the federal claim forming the basis of the court's original subject-matter jurisdiction.

After reviewing the Complaint, the Court finds it appropriate to exercise supplemental jurisdiction over the state-law claims. The state-law claims arise from the same nucleus of operative facts as the federal claims and the state-law claims neither are novel or complex, nor do they substantially predominate over the federal claims. Indeed,

one would expect these types of claims, which all stem from the same alleged misappropriation of Plaintiffs' likenesses and images, to be tried together. Accordingly, Platinum Plus's Motion is denied to the extent it requests the Court to not exercise supplemental jurisdiction.

### C. **State-Law Claims**

#### 1. **Section 540.08, Fla. Stat.**

Platinum Plus's argument that Plaintiffs failed to state a claim for violations of section 540.08, Fla. Stat., is based on facts not pled in the Complaint. To be sure, Platinum Plus argues: "based on 'industry standards' and the fact that every photograph is clearly professionally taken, **after limited discovery**, it shall be shown that Plaintiffs' signed releases and gave up all rights in the subject photograph(s)." (Doc. # 11 at 15) (bolding added).

As to industry standards, the allegations in the Complaint give rise to the reasonable inference that Plaintiffs would not have associated with Platinum Plus. (Doc. # 1 at ¶¶ 26-33). Moreover, Platinum Plus's argument that only "after limited discovery" will it be able to show a lack of standing demonstrates the weakness of its position. Simply put, Platinum Plus seeks dismissal on facts not contained within the four corners of the Complaint. The Motion

is therefore denied with respect to the claims for violations
of section 540.08, Fla. Stat.

## 2.   Common-Law Invasion of Privacy

There are four theories to establish invasion of
privacy:

> (1) appropriation—the unauthorized use of a
> person's name or likeness to obtain some benefit;
> (2) intrusion—physically or electronically
> intruding into one's private quarters; (3) public
> disclosure of private facts—the dissemination of
> truthful private information which a reasonable
> person would find objectionable; and (4) false
> light in the public eye—publication of facts which
> place a person in a false light even though the
> facts themselves may not be defamatory.

Agency for Health Care Admin. v. Associated Indus. of Fla.,
Inc., 678 So. 2d 1239, 1252 n.20 (Fla. 1996). Plaintiffs
proceed under the first theory—the unauthorized use of a
person's name or likeness to obtain some benefit.

The crux of Platinum Plus's argument is that the pictures
depicting Plaintiffs' likenesses were already widely
published and, therefore, its republication of the pictures
is not actionable. (Doc. # 11 at 16) (citing Heath v. Playboy
Enters., Inc., 732 F. Supp. 1145, 1148 (S.D. Fla. 1990)).
Platinum Plus's reliance on Heath, however, is misplaced. In
Heath, the court was faced with a claim for public disclosure
of private facts. 732 F. Supp. at 1148 ("the Court has

identified the publication of private facts as the only theory relevant to the facts before us."). Furthermore, the pictures at issue in <u>Heath</u> were taken in public. <u>Id.</u> at 1148-49. In such instances, republication is a defense.

In contrast, here, the Court is faced with a claim of unauthorized use of a person's name or likeness to obtain some benefit. <u>Heath</u> is therefore inapposite. In addition, Platinum Plus has not pointed to any authority supporting the proposition that republication is a defense to a claim for unauthorized use of a person's name or likeness to obtain some benefit. As such, the Motion is denied with respect to the claims for unauthorized use of a person's name or likeness to obtain some benefit.

### 3.   <u>FDUTPA</u>

"'Although not specifically identified in the statute, there are three elements that are required to be alleged to establish a claim pursuant to the FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages.'" <u>Borchardt v. Mako Marine Int'l, Inc.</u>, No. 08-61199-CIV, 2009 WL 3856678, at *5 (S.D. Fla. Nov. 17, 2009) (quoting <u>KC Leisure, Inc. v. Haber</u>, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008)). Platinum Plus argues that Plaintiffs failed to state a claim because they are not consumers, nor have they shown

actual damages. (Doc. # 11 at 17-18). The Court need not reach the issue of whether a plaintiff must be a consumer or merely a person to bring suit under FDUTPA because Plaintiffs failed to allege actual damages. (Doc. # 11 at 18).

Relying on BPI Sports, LLC v. Labdoor, Inc., No. 15-62212-CIV-BLOOM, 2016 WL 739652 (S.D. Fla. Feb. 25, 2016), Platinum Plus argues Plaintiffs have asserted what amount only to consequential damages. In BPI Sports, the court noted that "harm in the manner of 'competitive harm, diverted or lost sales, and harm to the goodwill and reputation of [plaintiff]" were consequential damages. 2016 WL 739652, at *6; see also Rollins, Inc. v. Butland, 951 So. 2d 860, 870 (Fla. 2d DCA 2006) ("the recovery afforded under FDUTPA does not include diminution in value or stigma damages"). As such, Plaintiffs failed to allege actual damages and the FDUTPA claims are therefore dismissed. However, such dismissal is without prejudice and the Plaintiffs are granted leave to amend so that they may attempt to allege actual damages.

## 4.  Civil Theft

Platinum Plus first argues Plaintiffs failed to comply with the notice requirement in section 772.11(1), Fla. Stat. (Doc. # 11 at 19). Section 772.11(1) requires that "[b]efore filing an action for damages . . ., the person claiming injury

must make a written demand for $200 or the treble damage amount of the person liable for damages under this section." The person upon whom such a demand is made has 30 days to comply. Fla. Stat. § 772.11(1).

Attached to the Complaint is the cease-and-desist letter sent to Platinum Plus on February 26, 2016. (Doc. # 1-3). This cease-and-desist letter contains a section labeled "**NOTICE OF CLAIM FOR CIVIL THEFT**," wherein Plaintiffs state:

> In addition, you have violated Florida's **Civil Theft Statute** §772.11 ("Section 772.11"). Under Section 772.11, any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of Florida Statutes 812.012 – 812.037 or 825.103(1) (civil theft) is punishable by **treble damages** (threefold the actual damages), attorneys' fees, and court costs.

(Id. at 8) (bolding in original). Based on the plain language of the cease-and-desist letter, the Court finds Platinum Plus's argument meritless.

Platinum Plus additionally argues Plaintiffs' claims for civil theft should be dismissed because they have not pled felonious intent. (Doc. # 11 at 20). While Plaintiffs will have to prove the elements of civil theft by the requisite degree of proof to ultimately prevail, at this preliminary stage, Florida law does not require them to plead felonious intent. Pinellas Fed. Credit Union v. Reynolds, No. 8:12-cv-

14-T-30MAP, 2012 WL 1069814, at *3 (M.D. Fla. Mar. 29, 2012) ("PFCU's arguments are without merit at this stage because, as Counterclaim Plaintiff points out. . ., Florida law does not require the pleading of an element of felonious intent in order to state a civil theft claim."). The Motion is accordingly denied with respect to the claims for civil theft.

### 5.   Unjust Enrichment and Conversion

There are three elements for a claim of unjust enrichment: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1094 (Fla. 3d DCA 2014). And, with respect to conversion, "[i]t is well settled that a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman) Ltd., 450 So. 2d 1157, 1160-61 (Fla. 3d DCA 1984) (citations and footnote omitted). "[T]he essence of conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part

of the wrongdoer to deprive the person entitled to possession of the property, which intent may be . . . shown by demand and refusal." Id. at 1161. (footnote omitted).

Platinum Plus argues Plaintiffs failed to allege, indeed cannot allege, facts as to all the elements for unjust enrichment and conversion. (Doc. # 11 at 20-21). The Court disagrees. While each specific claim for unjust enrichment and conversion alleges, in a terse fashion, facts bordering on legal conclusions (Doc. # 1 at ¶¶ 140-150, 225-235), the Complaint, when read as a whole, see, e.g., (Id. at ¶¶ 2-20, 24-57), alleges enough facts to give rise to a plausible claim to relief for unjust enrichment and conversion. Platinum Plus's Motion is therefore denied as to the unjust enrichment and conversion claims.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Platinum Plus, LLC's Motion to Dismiss Complaint (Doc. # 11) is **GRANTED IN PART AND DENIED IN PART.** In particular, Platinum Plus's Motion is denied, except as to Plaintiffs' FDUTPA claims. The claims brought under FDUTPA are dismissed for failure to allege actual damages. However, the Plaintiffs are granted to

leave to amend so that they may attempt to allege actual
damages.

(2)   Plaintiffs shall file an amended complaint consistent
with this Order by March 29, 2017.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this
20th day of March, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE